UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION


| | | |
|---|---|---|
| KATHY JO PLUMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13-cv-208-WGH-WTL |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER AFFIRMING THE
# ACTING COMMISSIONER'S DECISION

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on the Plaintiff's Complaint (Dkt. 1), the Plaintiff's supporting briefs (Dkts. 15, 26), and the Defendant's brief in opposition (Dkt. 22). The Magistrate Judge conducted oral argument on March 13, 2014.[1]

The Magistrate Judge, being duly advised, finds as follows:

**Issue 1: Did the ALJ error when he concluded that Plaintiff, Kathy Jo Plummer, had no medically determinable mental impairment?**

At pages 45 and 46 of the administrative record ("Record"), the ALJ concluded that while the Ms. Plummer initially had significant difficulties in cognitive function immediately following a cerebral hemorrhage in October 2009, she made a good recovery, and she currently has no significant residual

---

[1]The parties consented to Magistrate Judge jurisdiction (Dkts. 6, 8), and an Order of Reference was entered by District Judge William T. Lawrence (Dkt. 11).

cognitive effects. Although another ALJ might have decided this issue differently, there is substantial evidence to support this finding. Specifically, the consultative examination report of Dr. Brophy (R. 597-602), which was conducted in May 2010, is fairly read by the ALJ to determine that Ms. Plummer's memory and fluency were still within the average range, and Dr. Brophy does express that Ms. Plummer had essentially regained her formal level of functioning with some difficulty remembering various acronyms that nurses tend to use. The ALJ's finding is also supported by the records from Psychologist Ann Lovko. (Dkt. 637-50.) The ALJ also discussed and considered that a CT scan conducted in April 2011 was compared to a study from November 2009 and found no change in the brain and no new focal abnormalities. (*See* ALJ's Discussion at R. 48-49, and Study at R. 718.) These pieces of evidence are substantial evidence to support the ALJ's finding.

**Issue 2: Is the ALJ's residual functional capacity determination properly articulated?**

The ALJ concluded that Ms. Plummer had the residual functional capacity to perform light work as defined in the Regulations, except that she is limited to standing and/or walking four hours in an eight-hour work day, sitting for four hours in a work day, may not sit more than 30 to 40 minutes at one time, and must be given a corresponding sit/stand option. In pertinent part, the ALJ also found that Ms. Plummer had need for an assistive device or rail to perform tasks requiring balancing, including standing, and is unable to perform tasks requiring repetitive rotation of the neck.

In coming to this conclusion, the ALJ assigned significant weight to the opinion of a consultative examiner, Dr. Wang (R. 660-66), and a state agency reviewing physician, Dr. Sands (R. 133). A review of those two opinions finds that they constitute substantial evidence for that residual functional capacity finding.

Ms. Plummer's primary argument in this case is that the ALJ should have found her residual functional capacity compromised by mental impairments. However, as discussed in the prior section of this Order, substantial evidence supported the ALJ's conclusion, and there is therefore no error in failing to incorporate those mental limitations within the residual functional capacity determination made in this case.

**Issue 3: Did the ALJ err in his discussion and treatment of the opinion of Cindy Greentree, a physical therapist?**

At page 50 of the Administrative Record, the ALJ discussed a functional capacity evaluation conducted in June 2011 by Physical Therapist Cindy Greentree (R. 728-35).

In this case, the ALJ did not explicitly discuss Cindy Greentree's functional capacity examination, which seemed to indicate that Ms. Plummer could stand for less than two and one-half hours per work day. However, an overall review of Ms. Greentree's report does show that, while Ms. Plummer could stand for less than two and one-half hours, she could walk between two and one-half and five and one-half hours. The Magistrate Judge believes that the ALJ did not misread or cherry-pick Ms. Greentree's report and that, as a

3

whole, it is fairly read to support an ability to perform light physical demands consistent with the residual functional capacity that the ALJ found.

**Issue 4: Did the ALJ properly consider evidence of arthritis in the cervical spine and knees?**

The Magistrate Judge concludes that the ALJ's discussion at page 51 of the Record reflects his recognition of arthritic degeneration in the cervical spine and bilateral knees. In recognizing these problems, the ALJ included a further limitation of activities, including the sit/stand option and the limitation to avoid repetitive cervical rotation, among other limitations. The Magistrate Judge is unable to reweigh this evidence and finds no error in the ALJ's discussion.

**Issue 5: Was the ALJ's credibility assessment patently wrong?**

An ALJ's credibility determination must stand unless it is patently wrong. *Craft v. Astrue,* 539 F. 3d 668, 678 (7th Cir. 2008). The ALJ's credibility assessment is found at pages 50 and 51 of the Record. The ALJ did not specifically address Ms. Plummer's direct testimony at the hearing. However, the crux of Ms. Plummer's argument is that her description of her mental condition should be accepted. As previously discussed, the ALJ was entitled to conclude that the limitations were not severe based on the medical information which he discussed from Dr. Brophy and Dr. Lovko. The ALJ, in discussing Ms. Plummer's credibility, did rely on the medical descriptions of Ms. Plummer given by Dr. Berrend, Dr. Brophy, and Dr. Wang. While another ALJ could have concluded to the contrary, this Magistrate Judge cannot conclude that the ALJ was patently wrong in his credibility assessment.

**Issue 6: Is there substantial evidence to support that Ms. Plummer is capable of performing past relevant work?**

The ALJ found at page 51 of the Record that Ms. Plummer could perform her past relevant work as a Nursing Service Director and Utilization Review Coordinator. It is interesting to note that the Vocational Expert's testimony and the ALJ's findings in this case find that the prior relevant work as <u>actually performed</u> by Ms. Plummer was at the medium level of exertion. However, the Dictionary of Occupational Titles characterizes the type of work as light exertional work. A job constitutes appropriate past relevant work if the claimant can perform it as it is performed in the national economy. This likely is unfair to Ms. Plummer, but the jobs identified by the ALJ do constitute appropriate past relevant work.

**Conclusion**

In this case, Ms. Plummer is a person who has worked hard for many years, achieved much in her educational and professional endeavors, and has a vocational record to be proud of. She clearly endured a serious medical condition. She has also, according to at least some medical professionals, overcame a very difficult aneurysm and returned very close to her prior level of functioning. Her concern that some degree of difficulty remains with returning to her prior vocational level because residual difficulties with concentration is understandable. It is somewhat unfair to her that she may not be able to return to the jobs she performed in the past as they are actually performed. However, the relatively limited scope of review given to this Court does not allow the Magistrate Judge to conclude that the ALJ was incorrect when he

concluded that she did not have a severe mental impairment in this case based on the medical records before the ALJ.  Once that conclusion is reached, the methodology employed by the ALJ was not incorrect as a matter of law.  The Magistrate Judge must, therefore, affirm the decision of the Acting Commissioner in this case, though it is certainly not emotionally satisfying to do so.

    **SO ORDERED** the 24th day of March, 2014.

                                          William G. Hussmann, Jr.
                                          United States Magistrate Judge
                                          Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**